**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | **CRIMINAL NO.** |
| | ) | |
| **v.** | ) | **VIOLATIONS:  18 U.S.C. § 371** |
| | ) | **(Conspiracy to Commit Wire Fraud)** |
| **STACY M. CABRERA,** | ) | |
| | ) | **18 U.S.C. § 981(a)(1)(C) &** |
| **Defendant.** | ) | **28 U.S.C. § 2461(c)** |
| | ) | **(Criminal Forfeiture)** |

## INFORMATION

The United States of America hereby charges that:

<u>Background</u>

*Relevant Individuals and Entities*

1.     Lackland Air Force Base ("Lackland AFB") was a United States Air Force base located in Bexar County, Texas.

2.     Company 1 was a diversified real estate services company headquartered in Philadelphia, Pennsylvania. Company 1 was a division of a publicly traded multinational real estate and construction company based in the United Kingdom, for which securities were traded as American Depositary Receipts in the United States.  Company 1 was one of the nation's largest providers of military family housing, operating housing communities at approximately 21 Air Force bases and approximately 34 Army and Navy bases throughout the United States.  Company 1 generally operated these military housing communities through a network of wholly owned subsidiaries.

3.     Defendant **STACY CABRERA** ("**CABRERA**") was a citizen of the United States. **CABRERA** was an employee of Company 1 and served as the Community Manager at Lackland AFB from in or around 2013 through in or around 2016.  At all times relevant to the allegations in

this Information, **CABRERA** acted within the scope of **CABRERA's** agency and employment at Company 1, and to benefit herself and Company 1.

4.      CC-1 was a Maintenance Manager employed by Company 1 at Lackland AFB.

5.      CC-2 was a Work Order Administrator employed by Company 1 at Lackland AFB.

6.      CC-3 was a Facility Manager employed by Company 1 at Lackland AFB.

<u>The Military Housing Community at Lackland AFB</u>

7.      On or about December 23, 2008, the United States Air Force entered into an Operating Agreement with Company 1 for the purposes of demolition, design, financing, construction, renovation, operation, and maintenance of a rental housing development at Lackland AFB.  Under the terms of the agreement, Company 1 earned fees, set forth in a Fee Management Plan ("Plan"), for its work on each phase of the project, from design and development, to post-construction management.

8.      Company 1's fee for Community Management and Maintenance under the Plan consisted of (1) a base fee, paid monthly, and (2) a discretionary performance incentive fee (the "Performance Incentive Fee"), paid quarterly.  Both fees were a percentage of Effective Gross Rent ("EGR").  The base fee was fixed at 2.5% of EGR, and the Performance Incentive Fee was a range from 0% to 2.25% of EGR based on how well Company 1 managed the project.  The Performance Incentive Fee was in part contingent on Company 1 satisfying criteria related to community maintenance ("Maintenance Performance Objectives").

9.      To obtain the Performance Incentive Fee, Company 1 was required to report true and accurate information to the United States Air Force concerning Maintenance Performance Objectives at the military housing community at Lackland AFB.  In turn, the United States Air

Force relied upon Company 1's reports regarding its level of responsiveness to maintenance issues in assessing what, if any, Performance Incentive Fee was warranted.

10.     From in or around 2013 through in or around 2016, Company 1 routinely submitted false information to the United States Air Force regarding maintenance issues at Lackland AFB via a Quarterly Maintenance Report.   As a result, the United States Air Force was deceived into believing that Company 1 was meeting performance objectives set out in the Operating Agreement and elsewhere, and properly maintaining the housing community for the benefit of the servicemembers living there.   In truth and in fact, contrary to Company 1 and **CABRERA**'s representations to the United States Air Force, servicemembers stationed at Lackland AFB often lived in substandard conditions and waited unreasonable amounts of time for Company 1 to remedy maintenance issues ranging from leaking roofs to mold.

<u>**COUNT ONE**</u>
**Conspiracy**
**(18 U.S.C. §371)**

***The Conspiracy***

11.     From in or around June 2013 and continuing through in or around October 2016, the defendant, **STACY CABRERA**, did knowingly conspire and agree with others, known and unknown, to commit offenses against the United States, that is, to devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and cause to be transmitted certain wire communications in interstate and foreign commerce for the purposes of executing the scheme, in violation of Title 18, United States Code, Section 1343.

*Purpose of the Conspiracy*

12.     The purpose of the conspiracy was for **CABRERA** and her co-conspirators to unlawfully enrich Company 1 by: (1) using false and fraudulent representations to obtain Performance Incentive Fees from the United States Air Force to which Company 1 was not entitled; and (2) concealing the conspiracy.

*Manner and Means of the Conspiracy*

13.     The manner and means by which **CABRERA** and her co-conspirators sought to, and did, achieve the purposes of the conspiracy included the following:

a.     **CABRERA** received written and oral instructions from her co-conspirators to manipulate and falsify information in a computer system so that the Quarterly Maintenance Report submitted to the United States Air Force would falsely reflect that Company 1 had met the Maintenance Performance Objectives.

b.     **CABRERA** knowingly and intentionally directed her co-conspirator subordinates to falsely adjust completion times on work orders and to mark work orders complete prior to maintenance work being completed so that Company 1 would appear to be in compliance with the Maintenance Performance Objectives.

c.     **CABRERA** prepared and directed the preparation of false and fraudulent Quarterly Maintenance Reports and sent these reports by interstate wire communications to her co-conspirator supervisors, knowing that they would be submitted to the United States Air Force to support payment of Performance Incentive Fees.

## *Overt Acts in Furtherance of the Conspiracy*

14.    In furtherance of the conspiracy and to effect the purposes thereof, **CABRERA** and her co-conspirators performed or caused the performance of at least one of the following overt acts, among others not described herein:

a.  On or about October 22, 2014, referring to numbers in a draft Quarterly Maintenance Report, **CABRERA** sent an email to CC-1, the Maintenance Manager at Lackland AFB, writing, in part, "See the attached. The numbers circled in RED need to be 95% or above." CC-1 responded, "So this means we have to go in and change the dates to correct?"  **CABRERA** responded "Yes."

b.  On or about March 4, 2016, **CABRERA** emailed multiple co-conspirators, writing, "PLEASE provide real answers to the legitimately open WO's [work orders] and the[n] close the ones that need to be closed – **TODAY**! **I don't care what it takes**. Then moving forward, DO NOT let it get this way again….It's not only my ass on the line because of these WO's [work orders], but my boss AND her boss!!! Understand where this is going?!"

c.  On or about April 19, 2016, **CABRERA** emailed CC-3, the Facility Manager at Lackland AFB, writing, "Where are we on [CC-2] updating the WO's [work orders] in Yardi [the computer system] for the Quarterly Maintenance Report?"

All in violation of Title 18, United States Code, Section 371.

## **FORFEITURE ALLEGATION**

15.    Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), upon conviction of conspiracy to commit an offense against the United States, that is, wire fraud, in violation of 18 U.S.C. § 371, as alleged in this Information, the defendant shall forfeit to the United States of America all property, real and personal, which constitutes and is derived from proceeds traceable

to the conspiracy.  The property to be forfeited includes, but is not limited to, a money judgment in the amount of the total loss caused by the defendant's criminal conduct, as determined by the Court at sentencing.

16.     If any of the property described above, as a result of any act or omission of the defendant:

     a.   cannot be located upon the exercise of due diligence;

     b.   has been transferred or sold to, or deposited with, a third party;

     c.   has been placed beyond the jurisdiction of the court;

     d.   has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

Respectfully submitted,

DANIEL S. KAHN
Acting Chief, Fraud Section
Criminal Division
United States Department of Justice

By: *Michael P. McCarthy*

Michael P. McCarthy, D.C. Bar #1020231
Babasijibomi Moore
Trial Attorney, Fraud Section
Criminal Division
United States Department of Justice
1400 New York Avenue, N.W.
Bond Building, Fourth Floor
Washington, D.C. 20530
(202) 305-3995 (McCarthy)
Michael.McCarthy2@usdoj.gov
(202) 834-2793 (Moore)
Babasijibomi.Moore2@usdoj.gov