UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
APR 21 2021
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIMINAL NO. 21-182-01 (EGS) |
| v. | ) | VIOLATION: 18 U.S.C. § 371 |
| | ) | (Conspiracy to Commit Offenses) |
| STACY M. CABRERA, | ) | |
| Defendant. | ) | |

## STATEMENT OF THE OFFENSE

Pursuant to Federal Rule of Criminal Procedure 11, the United States, by and through its undersigned attorneys, and STACY M. CABRERA ("CABRERA"), with the concurrence of her attorney, Pleasant S. Brodnax, III, stipulate and agree that the following facts fairly and accurately describe CABRERA's conduct in the offense to which she is pleading guilty. These facts do not constitute all of the facts known to the parties concerning the charged offense and related conduct. This statement is being submitted to demonstrate that sufficient facts exist to establish that CABRERA committed the offense to which she is pleading guilty. CABRERA knowingly, voluntarily, and truthfully admits to the facts set forth below.

### Background

1. The Military Housing Privatization Initiative ("MHPI") was a statutorily established program designed to attract private sector financing, expertise, and innovation to provide necessary housing for military servicemembers, their families, and other dependents faster and more efficiently than traditional military construction processes would allow. Put into effect via the National Defense Authorization Act for Fiscal Year 1996, Public Law 104-106 (110, Stat 186, Section 2801), a goal of the MHPI was to provide military families access to safe, quality, affordable, well-maintained housing in a community where they will choose to live, while also

1

allowing them the convenience of being near military bases and other institutions consistent with their duties.

2. Branches of the U.S. Armed Forces, including the Air Force, Army, and Navy, have used authority granted to them under the MHPI to enter into agreements with private developers to own, maintain, and operate housing for U.S. military members at military bases around the United States.

3. Basic Allowance for Housing ("BAH") was an allowance provided to servicemembers stationed in the United States that is intended to cover housing costs in local civilian housing markets when government housing is not available. Under the MHPI, servicemembers generally used their BAH to pay rent to private developers.

4. As part of the program, private developers received U.S. Department of Defense money intended for the benefit of servicemembers in the form of BAH.

<u>Relevant Individuals and Entities</u>

5. Lackland AFB was a United States Air Force base located in Bexar County, Texas.

6. Company 1 was a diversified real estate services company headquartered in Philadelphia, Pennsylvania. Company 1 was a division of a publicly traded multinational real estate and construction company based in the United Kingdom. Company 1 was one of the nation's largest providers of military family housing, operating housing communities at approximately 21 Air Force bases, and approximately 34 Army and Navy bases throughout the United States. Company 1 generally operated these military housing communities through a network of wholly owned subsidiaries.

7. CABRERA was a citizen of the United States whose primary residence is Converse, Texas. CABRERA was an employee of Company 1 and served as the Community Manager at

Lackland AFB from approximately 2013. At all times relevant to the Information, and in furtherance of the criminal conspiracy detailed here, CABRERA acted within the scope of her agency and employment at Company 1, and to benefit herself and Company 1. The members of the conspiracy acted within the scope of their agency and employment at Company 1, and to benefit, at least in part, Company 1.

8. CC-1 was a Maintenance Manager at Lackland AFB.

9. CC-2 was a Work Order Administrator at Lackland AFB.

10. CC-3 was a Facility Manager at Lackland AFB.

11. CC-4 was a Regional Manager for Company 1.

12. CC-5 was a Regional Manager for Company 1.

13. CC-6 was an Administrative Assistant for CC-5.

Development and Management of the Military Housing Community at Lackland AFB

14. The purpose of the Lackland AFB Military Housing Privatization Initiative was to use private sector resources to provide rental housing for 883 military families at a cost-effective price to the Air Force. In or around early 2008, Air Force officials at Lackland AFB developed a strategy to provide military families access to safe, quality, affordable, and well-maintained housing in a community where they could choose to live, consistent with the goals of the MHPI.

15. On or about December 23, 2008, the U.S. Air Force conveyed to Company 1, real and personal property at Lackland AFB, for the purpose of developing a privatized housing community under the MHPI.[1]

---

[1] The real and personal property referenced in this paragraph was conveyed to a subsidiary of Company 1. For the purposes of the allegations charged in the Information in this matter, Company 1 refers to Company 1 and its subsidiaries that are involved in MHPI.

3

16.     The Air Force committed to lending Company 1 approximately $69,500,000 in connection with the development and operation of the Lackland MHPI project. On or about August 18, 2010, an agent of Company 1 signed a promissory note to secure the loan.

17.     On or about December 23, 2008, the Air Force entered into an Operating Agreement with Company 1 for the "purposes of demolition, design, financing, construction, renovation, operation, and maintenance of a rental housing development at Lackland [AFB]." Company 1 was required to "operate and manage the [Lackland project] according to good management practices common to the local rental housing industry and consistent with the requirements of [the] Operating Agreement." Under the terms of the agreement, Company 1 earned fees for its work on each phase of the project, from design and development, to post-construction management. The Fee Management Plan incorporated into the Operating Agreement (the "Plan") set forth the fees that Company 1 could earn.

18.     Company 1's fee for Community Management and Maintenance under the Plan consisted of (1) a base fee, paid monthly, and (2) a discretionary performance incentive fee (the "Performance Incentive Fee"), paid quarterly. Both fees were a percentage of Effective Gross Rent ("EGR"). The base fee was fixed at 2.5% of EGR, and the Performance Incentive Fee was a range from 0% to 2.25% of EGR based on how well Company 1 managed the project. The Performance Incentive Fee was in part contingent on Company 1 satisfying criteria related to community maintenance ("Maintenance Performance Objectives").

19.     From approximately 2013 to 2016, Company 1 received approximately $1 million in Performance Incentive Fees for satisfying the Maintenance Performance Objectives at Lackland AFB.

How Company 1 Tracked and Reported
Maintenance Performance Objectives to the Air Force

20.     Company 1 used a computer program called Yardi to manage maintenance issues that arose at Lackland AFB and the other military housing communities that it managed. Generally, when residents encountered a maintenance issue, from a ripped screen to a major water leak, they would report the issue to an on-site management office staffed by Company 1 employees. A Company 1 Work Order Administrator would enter information about the issue into Yardi, which generated a work order that could be used to track the maintenance issue. The Work Order Administrator used Yardi to schedule the issue for repair, to be carried out by Company 1 Maintenance Technicians and contractors; track progress of the repair; and document its completion. When the work was completed, the Work Order Administrator would "close out" the work order.

21.     Company 1 also used Yardi to generate Quarterly Maintenance Reports to track response and completion times for work orders to ensure that it was meeting the Maintenance Performance Objectives. Figure 1, below, is an example of a portion of the Quarterly Maintenance Report.

| Type | Total Calls | Total Responses | No. of Late Responses | % On-Time Responses | Avg Response Time (hrs) | Target Response Time (hrs) | Variance (Target - Avg.) | Total Completions | No. of Late Completions | % On-Time Completions |
|---|---|---|---|---|---|---|---|---|---|---|
| 1-Emergency | | | | .00 | .00 | .00 | .00 | | | .00 |
| Non-Warranty | 3 | 3 | | 100.00 | .28 | 1.00 | .72 | 3 | | 100.00 |
| Total 1-Emergency | 3 | 3 | | 100.00 | .28 | 1.00 | .72 | 3 | | 100.00 |
| 2-Urgent | | | | .00 | .00 | .00 | .00 | | | .00 |
| Non-Warranty | 379 | 375 | 11 | 97.07 | 1.17 | 4.00 | 2.83 | 379 | | 100.00 |
| Total 2-Urgent | 379 | 375 | 11 | 97.07 | 1.17 | 4.00 | 2.83 | 379 | | 100.00 |
| 3-Routine | | | | .00 | .00 | .00 | .00 | | | .00 |
| Routine (Standard) | 2,512 | 2,353 | 14 | 99.41 | 7.42 | 26.99 | 19.57 | 2,413 | 52 | 97.85 |
| Appointment | | | | .00 | .00 | .00 | .00 | 1 | 1 | .00 |
| Total 3-Routine | 2,512 | 2,353 | 14 | 99.41 | 7.43 | 26.99 | 19.56 | 2,414 | 53 | 97.80 |

*Figure 1*

22. Company 1 submitted a Performance Incentive Fee request letter and a summary of the Quarterly Maintenance Report to the Air Force on a quarterly basis. Figure 2, below, is an example of a Performance Incentive Fee request letter for Lackland AFB. Company 1 generally sent Performance Incentive Fee request letters via email, causing interstate wire communications from outside of Texas to the Air Force Civil Engineer Center in San Antonio, Texas. When the Air Force approved Company 1's Performance Incentive Fee request letter, Company 1 was authorized to make a withdrawal from the account in which Performance Incentive Fee funds were set aside.

> July 29, 2016
>
> Re: Lackland Q2 2016 Incentive Management Fee Request
>
> Dear Mr. Fisher,
>
> Attached is our Lackland Q2 2016 incentive fee submittal with supporting documents.
>
> Summary of Incentive Fees are as follows:
>
> Community and Maintenance Management Incentive Fee
> Recommended for Approval: $ 71,482.00
>
> Total Request: $ 71,482.00
>
> Please contact me at (210) 998-3495 or email at tmcphillips@bbcgrp.com if you or anyone reviewing this documentation has any questions.

*Figure 2*

### CABRERA's Role in Submitting False Information to the Air Force

23. As the Community Manager for Lackland AFB, CABRERA was the senior Company 1 employee responsible for overseeing the day-to-day management of the privatized military housing community there. Approximately 20 Company 1 staff members, including the Maintenance Manager (CC-1), Work Order Administrator (CC-2), and the Facility Manager (CC-3), reported to CABRERA.

24. CABRERA directly reported to Company 1 Regional Managers in Phoenix, Arizona, including CC-4 and CC-5.

6

25.     Among CABRERA's other duties, CABRERA was responsible for preparing and directing the preparation of the Quarterly Maintenance Report, reviewing its contents for accuracy, and sending it by interstate wire communications to her supervisors at Company 1 in Arizona and elsewhere.

26.     Based on her job responsibilities, training, and communications with other employees of Company 1, CABRERA knew, and had reason to know, that her Quarterly Maintenance Report was used to report the Maintenance Performance Objectives to the Air Force, and to obtain the Air Force's authorization for the Performance Incentive Fee each quarter.

27.     CABRERA admits that she conspired with CC-1, CC-2, CC-3, CC-4, CC-5, and CC-6 to manipulate and falsify information in Yardi in multiple quarters between in or around 2013 to in or around 2016 so that Quarterly Maintenance Reports would falsely reflect that Company 1 had met Performance Maintenance Objectives, when in truth and in fact, as CABRERA and her co-conspirators well knew, it had not. This allowed Company 1, acting through the co-conspirators, to submit requests to the Air Force for payment of Performance Incentive Fees to which it was not entitled.

28.     Specifically, in quarters in which Company 1 did not meet the Maintenance Performance Objectives, CABRERA received written and oral instructions from her supervisors, including CC-4 and CC-5, to manipulate and falsify information in Yardi so that the Quarterly Maintenance Report would falsely reflect that Company 1 had met the objectives.

29.     CABRERA knowingly and intentionally directed her subordinates to manipulate information in Yardi by, among other things, adjusting completion times for work orders, "closing" work orders early, or marking work orders "complete" prior to maintenance work

7

actually being performed. These actions had the effect of falsely inflating Company 1's Maintenance Performance Objectives at Lackland AFB.

30. On various occasions, CABRERA personally manipulated and falsified information in Yardi to create false Quarterly Maintenance Reports which were submitted to the Air Force.

31. CABRERA knowingly and intentionally sent multiple emails, via interstate wire communications, in which she directed CC-1, CC-2, and CC-3, among others, to manipulate and falsify information in Yardi. CABRERA sent the following emails, among others, in furtherance of the conspiracy to which she is pleading guilty.

32. On or about October 22, 2014, referring to numbers in a draft Quarterly Maintenance Report, CABRERA sent an email to CC-1, the Maintenance Manager at Lackland AFB, writing, in part, "See the attached. The numbers circled in RED need to be 95% or above." CC-1 responded, "So this means we have to go in and change the dates to correct?" CABRERA responded "Yes."

33. On or about March 27, 2015, CABRERA emailed CC-2, the Work Order Administrator at Lackland AFB, and others, writing, in part, "Only 2.2 more days left in the quarter……it's time to start review [work order] response and completion times and getting them to 95%. I have attached the [draft] Quarterly Maintenance Report for Routine and Urgent/Emergency and highlighted areas that need attention."

34. On or about March 30, 2015, CC-2 replied, "Been trying to work on it all day. I have gotten January up to 94% but that's the best I can do for that one due to waiting parts." Then, on or about April 1, 2015, CC-2 followed up on the March 30, 2015 email to CABRERA, writing,

8

"The waiting parts work orders are causing us to see the 95% that we need. Do you want me to manipulate a few of them in order to see 95%?"

35.     On or about March 4, 2016, CABRERA emailed multiple subordinates, writing, "PLEASE provide real answers to the legitimately open WO's [work orders] and the[n] close the ones that need to be closed – **TODAY**! **I don't care what it takes**. Then moving forward, DO NOT let it get this way again….It's not only my ass on the line because of these WO's [work orders], but my boss AND her boss!!! Understand where this is going?!"

36.     On or about April 19, 2016, CABRERA emailed CC-3, the Facility Manager at Lackland AFB, writing, "Where are we on [CC-2] updating the WO's [work orders] in Yardi for the Quarterly Maintenance Report?"

37.     CABRERA received instructions to manipulate information in Yardi into the second half of 2016 from CC-5, specifically. For example, on or about August 26, 2016, CC-6 (the administrative assistant to CC-5) sent CABRERA and Company 1 Community Managers at other Company 1-managed properties a draft Quarterly Maintenance Report, writing, "Please double and triple check your Maintenance Rpt for August BY next Tuesday 8/30 so there are no surprises and you do not miss your incentive fee; it's painful if not achieved, but easily avoidable."

38.     As a result of CC-5's pressure, CABRERA continued to participate in the conspiracy by knowingly and intentionally directing her subordinates to manipulate and falsify information in Yardi until in or around October 2016.

39.     By manipulating information in Yardi, and directing information to be manipulated, CABRERA and her co-conspirators knowingly and intentionally caused false information regarding the Maintenance Performance Objectives to be supplied to the Air Force on a quarterly

9

basis, deceiving the Air Force into believing that Company 1 was properly maintaining the housing community at Lackland AFB, and enriching Company 1 at the expense of the Air Force.

40. In fact, because Company 1 was not performing necessary maintenance at Lackland AFB as a result of CABRERA's and her co-conspirators' actions, substantial parts of the housing community fell into disrepair, leaving servicemembers living in substandard conditions.

41. CABRERA's actions were committed knowingly, willfully, and with the intent to defraud.

        Respectfully submitted,

        DANIEL S. KAHN
        Acting Chief, Fraud Section
        Criminal Division
        United States Department of Justice

By: *Michael P. McCarthy*

        Michael P. McCarthy, D.C. Bar #1020231
        Babasijibomi Moore
        Trial Attorneys, Fraud Section
        Criminal Division
        United States Department of Justice
        1400 New York Avenue, N.W.
        Bond Building, Fourth Floor
        Washington, D.C. 20530
        (202) 305-3995 (McCarthy)
        (202) 834-2793 (Moore)
        Michael.McCarthy2@usdoj.gov
        Babasijibomi.Moore@usdoj.gov

**DEFENDANT'S ACCEPTANCE**

The preceding Statement of the Offense is a summary, made for the purpose of providing the Court with a factual basis for my guilty plea to the charge against me. It does not include all of the facts known to me regarding this offense. I make this statement knowingly and voluntarily and because I am, in fact, guilty of the crime charged. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

I have read every word of this Statement of the Offense or have had it read to me. Pursuant to Federal Rule of Criminal Procedure 11, after consulting with my attorney, I agree and stipulate to this Statement of the Offense, and declare under penalty of perjury that it is true and correct.

Date: 3/2/2021

Stacy M. Cabrera
Defendant

**ATTORNEY'S ACKNOWLEDGMENT**

I have read this Statement of the Offense, and have reviewed it fully with my client. I concur in my client's desire to adopt and stipulate to this Statement of the Offense as true and accurate.

Date: March 2, 2021

Pleasant S. Brodnax, III, Esq.
Counsel for Stacy M. Cabrera

11