UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 1:21-cr-00182 (EGS) |
| | ) | Hon. Emmet G. Sullivan |
| STACY M. CABRERA, | ) | Sentencing: July 29, 2022 |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S SENTENCING MEMORANDUM

Comes now the Defendant, by counsel, and hereby submits this sentencing memorandum for consideration by the Court. Pursuant to the factors set forth in Title 18 U.S.C. §3553(a) and U.S. Supreme Court precedent cited hereinafter, Ms. Cabrera respectfully requests the Court impose a term of home confinement of no more than 6 months, followed by a two-year term of supervised release. Mr. Cabrera submits that the requested sentence is sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in 18 U.S.C. §3553.

### I. BACKGROUND

Ms. Cabrera appears before the Court after having accepted responsibility on April 21, 2022 to the Criminal Information filed on March 3, 2021, which charged her with Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. §371.

Ms. Williams was an employee of Balfour Beatty Communities, LLC and served as the Community Manager at Lackland AFB, where she was responsible for overseeing the day-to-day management of the privatized military housing community. She reported to Rick Cunefare, who oversaw five of the 21 Air Force bases involved by the fraud scheme. Cunefare directed community managers at these bases, who were subordinate to him, including Ms. Cabrera, to supply him with maintenance numbers that satisfied the performance objectives so that BBC would earn performance incentive fees for quarters that Balfour was not entitled to the fees.

The presentence investigation report ("PSR") determined that the applicable sentencing guideline provisions presented a total offense level of 22 and a criminal history category of I. The

parties submit, as the United States sets forth in its sentencing memorandum [Dkt. 18], that the total offense level should be 21, as Ms. Cabrera supervised less than five participants.

The United States' memo also includes a motion for downward departure based on Ms. Cabrera's substantial assistance to law enforcement. As a result, the United States asks the Court to impose a sentence at the low end of an amended offense level of 11, or an amended guideline range of 8 to 14 months.

Ms. Cabrera has communicated with the United States, through counsel, since July 2020. She has been on pretrial release since March 2021 and has remained in compliance with her release conditions. As the Court considers the "whole person" whom it will sentence, Ms. Cabrera submits her history and personal characteristics warrant a variant sentence which will adequately balance the goals of sentencing with the unique facts and circumstances of her life.

## II. SENTENCING FACTORS

### A. Overview

For the past 17 years, not only have courts had wide discretion to impose non-guidelines sentences, see *United States v. Booker*, 543 U.S. 220, 226-227 (2005), but the "effectively advisory," Id. at 245, the guidelines are not even to be "presumed reasonable," *Nelson v. United States*, 555 U.S. 350, 352 (2009). The sentencing guidelines are only "the starting point and the initial benchmark" of a sentencing analysis. *Gall v. United States*, 552 U.S. 38, 49 (2007). A district court conducts "its own independent review of the sentencing factors, aided by the arguments of the prosecution and defense." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008).

The touchstone of the sentencing court's individualized assessment is an analysis of 18 U.S.C. § 3553(a):

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed to: (A) reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)  the kinds of sentences available;

(4)  the kinds of sentences and the sentencing range established for: (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines;

(5)  any pertinent policy statement – [...];

(6)  the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)  the need to provide restitution to any victims of the offense.

18 U.S.C. §3553(a)(1)-(7).  Ultimately, the overarching goal of sentencing is to ensure that a sentence is sufficient, but not greater than necessary to satisfy the purposes of sentencing.

### B. History & Characteristics of Ms. Cabrera and the Nature & Circumstances of the Offense (§ 3553(a)(1))

*1. Ms. Cabrera's History & Characteristics*

Ms. Cabrera was born in the Panama Canal Zone, Panama to the marital union of two U.S. citizens. Her biological father died in 2011, following complications with diabetes. Her mother resides in Arizona and is retired. Ms. Cabrera has one sibling, a sister, who also lives in Arizona.

Despite describing her childhood as "good", the presentence report indicates much trauma visited by the hand of her father, ¶¶ 82-83. Ms. Cabrera also suffers from significant physical issues outlined in ¶¶ 99-104, some of which her mother attributes to Ms. Cabrera's service in the U.S. Marine Corps, where the received several medals and awards for her service.

Ms. Cabrera and her husband (who lost his job in June 2022) have two children, one of whom is nonverbal autistic.  A custodial sentence would have an unwarranted impact on the care and custody of their children as the family will lose its only current source of income. ¶¶ 90-91. In fact, the United States acknowledges that "the government recognizes the harm that prolonged separation from a parent can do to a child, especially one with special needs." [Dkt. 18, p.13].

Ms. Cabrera has no history of drug use or abuse. With the exception of a seemingly minor event while serving in the U.S. Marine Corps, she has never been charged or convicted of any criminal offense. She has expressed remorse for her actions and involvement in the instant offense.

3

*2. Nature & Circumstances of the Offense*

Ms. Cabrera admits her participation in this scheme was wrong and illegal. She has accepted full responsibility for her role in the unlawful activity. She understands that she is solely to blame for her choices and deeply regrets getting involved in this fraudulent activity.

**C. Remaining Factors of 18 U.S.C. § 3553(a)**

*1. The Need for the Sentence Imposed to Reflect the Seriousness
of the Offense, to Provide Just Punishment, to Avoid Unwarranted
Sentence Disparities, and to Promote Respect for the Law*

As the Court reflects upon the person being sentenced, Ms. Cabrera urges the Court to consider that the requested sentence will reflect the seriousness of the instant offense, promote respect for the law, provide just punishment, and avoid unwarranted sentence disparities. The requested sentence will allow Ms. Cabrera to continue to provide financial and emotional support to her special-needs son, will provide just punishment for the offense, and will not remove Ms. Cabrera from the family she loves and supports.[1]

*2. The Requested Sentence Can Provide Adequate Deterrence,
and Protect the Public from Future Offenses by Ms. Cabrera*

A sentence of home confinement will provide adequate general and specific deterrence. The available empirical data does not support the conclusion that increased punishment leads to increased deterrent effects.[2] Nonetheless, a felony conviction and the requested sentence send a message to the community that criminal conduct will not be tolerated and provides specific deterrence while Ms. Cabrera remains on supervised release.

---

[1] Because prisons are often located in rural areas, and because convicts' families and friends have limited ability to travel, convicts' relationships with people on the outside may be eroded seriously during long terms of imprisonment. See Jeremy Travis, et al., Urban Institute Justice Policy Center, Families Left Behind: The Hidden Costs of Incarceration and Reentry 1 (rev. ed. 2005) available at https://www.urban.org/research/publication/families-left-behind (reporting that incarcerated fathers and mothers are housed an average of 100 and 160 miles, respectively, from their children).

[2] Valerie Wright, Ph.D., "Deterrence in Criminal Justice," The Sentencing Project (November 2010)( https://www.sentencingproject.org/publications/deterrence-in-criminal-justice-evaluating-certainty-vs-severity-of-punishment/ ("...the studies reviewed do not provide a basis for inferring that increasing the severity of sentences generally is capable of enhancing deterrent effects"), quoting Andrew von Hirsch, Anthony Bottoms, Elizabeth Burney, and P-O. Wikstrom, "Criminal Deterrence and Sentence Severity: An Analysis of Recent Research," Oxford: Hart Publishing (1999).

### III.  CONCLUSION

Based on the forgoing, Ms. Cabrera respectfully submits a sentence of no more than six months home detention is sufficient, but not greater than necessary, to address the goals of sentencing in this case.

Respectfully submitted,

STACY M. CABRERA
By Counsel


/s/Pleasant Brodnax
Pleasant S. Brodnax, III
1701 Pennsylvania Avenue, NW
Suite 200
Washington, D.C. 20006
(202) 462-1100
pleasant.brodnax@gmail.com


### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing motion was filed by CM/ECF on the 5th day of July 2022, which will send a notification of such filing (NEF) to counsel of record.

/s/Pleasant Brodnax
Pleasant S. Brodnax, III